UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Roger A. Sevigny,
Insuance Commissioner,
as Liquidator of
The Home Insurance Company**

    **v.**                                  Case No. 05-cv-257-PB

**OM Group, Inc. and
OMG Americas, Inc.**


**MEMORANDUM AND ORDER**

Roger A. Sevigny, Insurance Commissioner of the State of New Hampshire ("the Commissioner"), brings this action against OM Group, Inc. ("OMG") and OMG Americas, Inc. ("OMG Americas") (collectively, "defendants"), seeking the return of defense costs that The Home Insurance Company ("Home") paid to defendants under a reservation of rights. Defendants move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). I grant defendants' motion for the reasons that follow.

**I.   BACKGROUND**

**A.   Underlying Dispute**

OMG, a Delaware corporation, has its principal place of business in Cleveland, Ohio.  OMG Americas, a wholly-owned subsidiary of OMG, is an Ohio corporation that also has its principal place of business in Cleveland.[1]  Defendants manufacture and distribute cobalt, nickel and other metal products used in various industries.  According to OMG's Annual Report filed with the United States Securities and Exchange Commission, it served approximately 3,300 customers in 2004 and had net sales in excess of $1.3 billion, 22% of which occurred in the Americas.  Pl. Prelim. Mem. of Law Ex. C.

Home is an insurance company incorporated under the laws of the State of New Hampshire with its principal place of business in New York, New York.  Home's subsidiary, The Home Insurance Company of Illinois (which merged with Home in 1995), issued a series of general liability insurance policies to OMG between

---

[1] OMG and OMG Americas were formerly known as Mooney Chemicals, Inc.

1992 and 1995.[2]

In June 1996, defendants demanded that Home defend and indemnify them against various claimants who alleged that OMG manufactured and distributed a defective wood preservative (known as M-GARD) that caused treated utility poles to rot prematurely. In August 1996, Home accepted defendants' tender of defense costs and expenses pursuant to a reservation of rights. Home then filed a declaratory judgment action in the state courts of Ohio, in which it asserted that it had no duty to defend or indemnify defendants for these claims. Ultimately, the Ohio courts determined that Home had no duty to defend or indemnify defendants with respect to the M-GARD claims. That decision became final in November 2003 when the Ohio Supreme Court declined to hear any further appeal by defendants.

Home unsuccessfully sought to collect over $1,418,000 in costs and expenses from defendants after the Ohio declaratory judgment action became final.

---

[2] All of the transactions between Home and OMG concerning the insurance policies took place in Ohio. Aff. of R. Louis Schneeberger ("Schneeberger Aff.") ¶ 19.

**B.  Liquidation Action**

On March 6, 2003, the Merrimack County Superior Court declared Home insolvent and ordered it into rehabilitation under the Insurers Rehabilitation and Liquidation Act, N.H. Rev. Stat. Ann. ("RSA") ch. 402-C.  The Superior Court issued an Order of Liquidation on June 11, 2003, pursuant to which the Commissioner has the authority to marshal Home's assets and distribute them to creditors.  Under this authority, the Commissioner commenced the current action in Superior Court in June 2005 to recover the defense costs owed by defendants.  Defendants, asserting diversity jurisdiction, removed the action to this court and filed a motion to dismiss for lack of personal jurisdiction.

**C.  Facts Relevant to Personal Jurisdiction**

The Commissioner has proffered evidence that defendants employed three independent agents to sell their products in the New England area, including New Hampshire.  Pl. Supplemental Mem. of Law Ex. D, E, F (G. E. Chaplin, Inc., TMC Materials Co., The Truesdale Co. agency agreements).  Between 1996 and 2005, OMG Americas[3] entered into approximately 300 separate sales

---

[3] Defendants maintain that OMG is merely a "holding company" and that its subsidiary, OMG Americas, was the "seller of record"

transactions with fifteen New Hampshire-based customers. The resulting gross sales totaled approximately $380,500, with annual sales peaking at $54,144.83 in 1998. Pl. Supplemental Mem. of Law Ex. B, Resp. to Interrog. No. 2. In addition, the Commissioner alleges that defendants advertised in specialty publications and through direct mail marketing on a world-wide basis and "may have" received telephone calls from New Hampshire customers seeking advice regarding the use of their products. Pl. Supplemental Mem. of Law at 3; see Resp. to Interrog. No. 8; Resp. to Doc. Req. No. 9.

Defendants counter that they do not have any offices, assets, real property or tangible personal property in New Hampshire. Schneeberger Aff. ¶¶ 12, 13. They also do not have a registered agent for service of process or any bank accounts in New Hampshire, and they have never paid any taxes in New Hampshire. Id. ¶¶ 8, 14, 15. Furthermore, they argue that there

---

for any products sold in New Hampshire. Pl. Supplemental Mem. of Law Ex. B, Resp. to Interrog. No. 5. I need not decide whether OMG Americas' activities should be attributed to OMG because I conclude that their collective contacts with New Hampshire are insufficient for general jurisdiction. See generally Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465-66 (1st Cir. 1990) (discussing personal jurisdiction over parent corporation and its subsidiary).

is no evidence that any of defendants' advertising materials actually reached New Hampshire or that defendants ever received any telephone calls from New Hampshire customers.  Def. Reply Mem. of Law in Supp. of Mot. to Dismiss at 2-3.

## II.  **STANDARD OF REVIEW**

When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists.  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998).  Because I have not held an evidentiary hearing, the Commissioner need only make a prima facie showing that the court has personal jurisdiction over the defendants.  See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995).

To make a prima facie showing of jurisdiction, the Commissioner may not rest upon the pleadings.  Rather, he must "adduce evidence of specific facts" that support his jurisdictional claim.  See Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995).  I take the facts offered by the plaintiff as true and construe them in the light most favorable to the plaintiff's claim.  Mass. Sch. of Law, 142

-6-

F.3d at 34. I do not act as a fact-finder; instead, I determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997). While the prima facie standard is liberal, I need not "credit conclusory allegations or draw farfetched inferences." Mass. Sch. of Law, 142 F.3d at 34 (quotation omitted). I also consider facts offered by the defendants, but only to the extent that they are uncontradicted. See id.

### III.  ANALYSIS

When assessing personal jurisdiction over a non-resident defendant in a diversity of citizenship case, "a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Sawtelle, 70 F.3d at 1387 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)). Accordingly, I must determine whether the exercise of jurisdiction is proper under both the relevant New Hampshire long-arm statute and the due process requirements of the federal Constitution. See id.

### A. New Hampshire Long-Arm Statute

The Commissioner argues that New Hampshire's Insurers Rehabilitation and Liquidation Act gives this court personal jurisdiction over the defendants. See RSA § 402-C:4, V. The New Hampshire Supreme Court has not addressed whether this statute grants personal jurisdiction over non-resident corporations. I need not decide this issue, however, because New Hampshire's corporate long-arm statute, RSA § 293-A:15.10, authorizes jurisdiction over unregistered foreign corporations to the full extent permitted by the federal Constitution. Sawtelle, 70 F.3d at 1388; McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994). Accordingly, I proceed directly to the constitutional analysis.

### B. Due Process Requirements

The Due Process Clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The "constitutional touchstone" for personal jurisdiction is "whether

the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  A defendant cannot be subjected to a forum state's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts. Burger King, 471 U.S. at 475 (quotations omitted).  Rather, "'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may assert authority over a defendant by means of either general or specific jurisdiction. Mass. Sch. of Law, 142 F.3d at 34.  A defendant who has engaged in continuous and systematic activity in a forum is subject to general jurisdiction in that forum with respect to all causes of action, even those unrelated to the defendant's forum-based activities. Phillips

Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). A court may exercise specific jurisdiction, by contrast, only when the cause of action arises from, or relates to, the defendant's contacts with the forum. Id. The Commissioner concedes that the current action is not directly related to the defendants' contacts with New Hampshire. Thus, I must determine whether this court has general personal jurisdiction.

Two criteria must be met to establish general jurisdiction: (1) "'continuous and systematic general business contacts'" must exist between the defendant and the forum; and (2) the exercise of jurisdiction must be reasonable as demonstrated by certain "gestalt factors." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). The standard for such a showing is high; "although minimum contacts suffice in and of themselves for specific jurisdiction . . . the standard for general jurisdiction is considerably more stringent." Donatelli, 893 F.2d at 463 (quotation and brackets omitted).

As described in detail above, the Commissioner's claim of general jurisdiction is based primarily upon the defendants'

-10-

sales to New Hampshire-based customers, which totaled approximately $380,500 between 1996 and 2005. Although defendants claim that they did not make any "direct" sales in New Hampshire, they admit that three of their agents sold defendants' products in the New England region.

To determine whether defendants' contacts with New Hampshire are sufficient for general jurisdiction, I look to "the types of contacts deemed sufficiently continuous and systematic in other cases." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998).[4] The First Circuit has held that "where 'defendant's only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to assume jurisdiction.'" Glater v. Eli Lilly & Co., 744 F.2d 213, 217 (1st Cir. 1984) (quoting Seymour v. Parke, Davis & Co., 423 F.2d 584, 586-87 (1st Cir. 1970)); accord Harlow v. Children's Hosp., 432 F.3d 50, 66 (1st Cir. 2005).

---

[4] The Commissioner relies upon two patent infringement cases in which this court, applying the law of the Federal Circuit, found that specific jurisdiction existed under a "stream of commerce" theory. See Braley v. Sportec Prods. Co., 2002 DNH 133, 2002 WL 1676293, at *5 (D.N.H. July 16, 2002); R & J Tool, Inc. v. Manchester Tool Co., 2000 DNH 97, 2001 WL 1636435, at *4 (D.N.H. April 21, 2001). Those cases are not instructive here.

In Glater, the contacts supporting general jurisdiction included: (1) defendant's nationwide marketing of its products; (2) advertisements in professional trade journals that circulated in the forum state; (3) wholesale distributors of the defendant's products that were located in the forum state; and (4) eight sales representatives who provided information about the defendant's products to potential customers in the forum state. Id. at 214-15.  The First Circuit concluded that, in the absence of a "substantial showing based on considerations of fairness and convenience," due process considerations would not permit the exercise of general jurisdiction under these circumstances.  Id. at 217; see also Noonan, 135 F.3d at 93 (finding general jurisdiction lacking where defendant's employees visited the forum state and defendant regularly solicited business from forum-state companies, resulting in $585,000 of in-state orders); Seymour, 423 F.2d at 587 (finding general jurisdiction lacking based on advertising and solicitation of orders by a half dozen salesmen in forum state); Elliott v. Armor Holdings, Inc., 2000 DNH 012, 2000 WL 1466112, at *10 (D.N.H. Jan. 12, 2000) (finding general jurisdiction lacking based on sales by two regional agents in forum state and acquisition of subsidiary that sold

products in forum state).

Here, the defendants' contacts with the forum state are even less extensive than those present in the cases discussed above. Defendants have employed only three sales agents to sell their products in the New England area, resulting in relatively insignificant revenue from sales to New Hampshire-based customers.  Although the Commissioner admittedly has a strong interest in marshaling Home's assets to distribute to its creditors, defendants' contacts with New Hampshire are less continuous and systematic than those found to be insufficient for general jurisdiction in other cases.  Thus, I conclude that the Commissioner has failed to make a prima facie showing for an exercise of general jurisdiction over the defendants.

Having determined that defendants' New Hampshire contacts are insufficient to authorize general jurisdiction, I need not address whether asserting jurisdiction would be reasonable under the gestalt factors.  See Noonan, 135 F.3d at 94.

### IV.  CONCLUSION

For the foregoing reasons, I grant defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P.


12(b)(2) (Doc. No. 11).

    SO ORDERED.

                                  <u>/s/Paul Barbadoro</u>
                                  Paul Barbadoro
                                  United States District Judge

February 13, 2006

cc:   J. Christopher Marshall, Esq.
      Russell G. Bogin, Esq.
      James P. Bassett, Esq.
      Keith A. Vanderburg, Esq.